IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 10-cr-00196-WYD-01

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.    STEVEN DEHAVEN,

       Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States, by and through Matthew T. Kirsch, Assistant United States Attorney for the District of Colorado, and the defendant, Steven DeHaven, personally and by counsel, Elvin L. Gentry, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

### I. PLEA AGREEMENT

1.    The defendant agrees to plead guilty to Count 1 of the Information, charging him with aiding in the preparation and presentation of a false tax return, in violation of Title 26, United States Code, Section 7206(2). The defendant agrees to execute a separate, written waiver of his right to indictment on this charge.

2.    The defendant agrees to pay the $100 special monetary assessment applicable to Count 1 at or before the time of sentencing.

Court Exhibit 1
10-cr-00196

3.  The defendant agrees to pay restitution for all relevant conduct to the Internal Revenue Service (IRS) in the amount of $141,951. This liability may be joint and several with that of taxpayers whose returns he prepared.

4.  The United States Attorney's Office for the District of Colorado (the Government) agrees to file a motion for the defendant to receive an additional 1-level reduction for acceptance of responsibility, pursuant to Section 3E1.1(b) of the Sentencing Guidelines, if the defendant's adjusted offense level is at least 16.

5.  The Government agrees that it will file no other federal criminal charges against the defendant based on matters currently known to the government.

6.  The government agrees to recommend a sentence at the bottom of the applicable guideline range as determined at sentencing. The defendant reserves the right to request a downward departure and/or a variance from the otherwise applicable guideline range. Provided that the defendant demonstrates his continued participation in an intensive alcohol treatment program and his willingness to continue such treatment in the future, the government agrees that it will not oppose a request for a downward departure to Criminal History Category IV pursuant to U.S.S.G. §4A1.3(b)(1).

7.  This plea agreement is made pursuant to Rule 11(c)(1)(A) and (c)(1)(B) of the Federal Rules of Criminal Procedure.

## II. ELEMENTS OF THE OFFENSE

8.  The defendant understands that in order to prove his guilt as to Count 1, the

Government must prove, beyond a reasonable doubt, that:

    A.    The defendant aided or assisted in the preparation or presentation of a 2004 U.S. Individual Income Tax Form 1040 in the names of Joseph J. and Lynn C. Chesla;

    B.    This income tax return falsely stated in Schedule A that Joseph J. and Lynn C. Chesla made charitable contributions of $4,288 and incurred unreimbursed employee business expenses of $16,745 and falsely stated in Schedule D that Joseph J. and Lynn C. Chesla incurred non-business bad debt of $3,000;

    C.    The defendant knew the statements described above in the 2004 U.S. Individual Income Tax Form 1040 in the names of Joseph J. and Lynn C. Chesla were false;

    D.    The defendant acted willfully, that is, with the voluntary intent to violate a known legal duty; and

    E.    The false statements were material.[1]

### III. MAXIMUM STATUTORY PENALTIES

9. The maximum statutory penalty for the offense in Count 1 is: not more than three years of imprisonment, a fine of not more than the greater of $250,000 or twice the gain or loss from the offense (plus costs of prosecution), or both; not more than 1 year of

---

[1] *Tenth Circuit Pattern Jury Instructions (Criminal Cases)* (2005) § 2.94.

supervised release; a $100 special assessment fee, and; restitution.

10. The conviction may also cause the loss of certain civil rights, such as the right to possess firearms, to vote, to hold elective office, and to sit on a jury.

11. A violation of the conditions of probation or supervision may result in a separate prison sentence.

### IV. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

12. The parties agree that there is no dispute as to the material elements which establish a factual basis for the offense of conviction.

13. Pertinent facts are set out below in order to provide a factual basis of the plea and to provide facts which the parties stipulate are relevant, pursuant to §1.B1.3, for computing the appropriate guideline range.

14. The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the guideline computation (§1B1.3) or to sentencing in general (§1B1.4). Nor is the Court or Probation precluded from the consideration of such facts. In "determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." (§6B1.4 Comm.)

15. The parties agree that the government's evidence would show that the date

on which conduct relevant to the offense (§1B1.3) began is approximately January, 2004.

16. The parties agree that the government's evidence would be:

Steven DeHaven received his Colorado Certified Public Accountant's license in 1984, and has worked in the accounting field for approximately 25 years. Beginning in 2004, Mr. DeHaven began operating a tax preparation business, Steven DeHaven CPA, from an office in his home in Colorado Springs, Colorado.

From 2004 through approximately April, 2007, Mr. DeHaven assisted a number of his clients with the preparation and filing of materially false and fraudulent tax returns. Often, the clients were not aware of the false and fraudulent nature of these returns. These returns included some combination of Schedules A which contained false information about various deductions, including false or inflated deductions for charitable contributions and unreimbursed employee business expenses, Schedules C which contained information about non-existent businesses, and Schedules D which contained false information about deductions for non-business bad debts. The purpose and effect of these false or inflated deductions was to increase the sizes of the refunds Mr. DeHaven's clients would receive. Mr. DeHaven did not ask his clients to complete questionnaires and did not keep work papers or notes from client interviews. Mr. DeHaven rarely reviewed, and in some cases affirmatively avoided reviewing, clients' receipts or other supporting documentation related to entries in their returns.

During the relevant time period, Mr. DeHaven assisted in the preparation of at

least 84 returns, for the tax years 2003 through 2006, containing the types of false information described above, as reflected in Appendix A. The total tax due and owing for these returns is $141,951.

With respect to the charge in Count 1, on or about April 12, 2005, Mr. DeHaven willfully assisted in the preparation and presentation to the Internal Revenue Service of a 2004 U.S. Individual Form 1040 Income Tax Return in the names of Joseph J. and Lynn C. Chesla, which falsely stated in Schedule A that Joseph J. and Lynn C. Chesla made charitable contributions of $4,288 and incurred unreimbursed employee business expenses of $16,745 and falsely stated in Schedule D that Joseph J. and Lynn C. Chesla incurred non-business bad debt of $3,000. These entries were not based on information provided to Mr. DeHaven by the Cheslas, and he knew that they did not make the charitable contributions and did not incur the unreimbursed employee business expenses listed in Schedule A and did not incur the non-business bad debt listed in Schedule D. The total amount of these false or inflated deductions was $20,549. The false information was material to the IRS because it caused the Cheslas' return to indicate that they were entitled to a refund of $247, as opposed to having tax due and owing of $4,712.

## V. SENTENCING COMPUTATION

17.   Any estimation by the parties regarding the estimated appropriate guideline application does not preclude either party from asking the Court to depart from the otherwise appropriate guideline range at sentencing, if that party believes that there exists

an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the sentencing guidelines. (§5K2.0)

18    The parties understand that the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position of the parties. (§6B1.4(d)) The Court is free, pursuant to §§6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information. (§6B1.4 Comm.; §1B1.4)

19.    To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute. (§6B1.4(b)) New facts which arise or are discovered may cause a party to change its position with regard to guideline computations or sentencing. The parties' estimated guideline application for Count 1 is:

A.    The base guideline is U.S.S.G. §2T1.4(a)(1), with a base offense level of 16 because the offense involved tax loss of more than $80,000. §2T4.1(F).

B.    A 2-level enhancement applies because the defendant committed the offense as part of a pattern or scheme from which he derived a substantial portion of his income and he was in the business of preparing tax returns. §2T1.4(b)(1).

C. There are no Chapter 3 adjustments.

D. The adjusted offense level for Count 1 would therefore be 18.

E. The defendant should receive a 3-level reduction for acceptance of responsibility. §§3E1.1(a) & (b). The resulting offense level would therefore be 15.

F. The parties understand that the defendant's criminal history computation is tentative and that the criminal history category is determined by the Court. The defendant appears to have sufficient criminal history points to place him in Criminal History Category VI.

G. The career offender/criminal livelihood adjustments do not apply.

H. The guideline range resulting from the estimated offense level of (E) above, and the tentative criminal history category of (F) above, is the statutory maximum of 36 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level of (E) above could conceivably result in a range from 18 months (bottom of Category I) to 36 months (the statutory maximum).

I. Assuming the estimated offense level of (E) above, the fine range for this offense is $4,000 to $250,000, plus applicable interest and penalties. §5E1.2(c)(3) & (4).

J. Pursuant to guideline §5D1.2, if the Court imposes a term of supervised

release, that term shall be one year.

K. Pursuant to guideline §5E1.1(a)(1), the Court shall enter a restitution order requiring the defendant to pay $141,951 to the IRS.

## V. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

20. The parties believe the sentencing range resulting from the proposed plea agreement is appropriate because all relevant conduct is disclosed, the sentencing guidelines take into account all pertinent sentencing factors with respect to this defendant, and the charge to which the defendant has agreed to plead guilty adequately reflects the seriousness of the actual offense behavior.

21. This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the United States nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

5/10/10
Date

Steven DeHaven
Defendant

5/10/10
Date

Elvin L. Gentry
Attorney for Defendant

5/14/2010
Date

Matthew T. Kirsch
Assistant U.S. Attorney